Good morning, all. Your Honors, the first case on the docket this morning is Issue-17-0867, the people of the State of Illinois, Lakeland, Abilene v. Benjamin Pabello v. Benjamin Pabello. Arguing on behalf of Ms. Benjamin Pabello, Ms. Amber Lynn Hopkins-Reid. Arguing on behalf of Lakeland, Abilene v. Richard S. White. And again, good morning. Ms. Hopkins-Reid, whenever you are ready, you may proceed. Good morning, Your Honors, and may it please the Court. Counsel. My name is Amber Hopkins-Reid, and I'm with the Office of the State Appellate Defender here on behalf of the appellant, Mr. Benjamin Pabello. Mr. Pabello was found guilty of two counts of predatory criminal sexual assault and sentenced to two consecutive terms of 15 years' imprisonment. Thereafter, Mr. Pabello filed a timely post-conviction petition alleging that he should have been given a Spanish translator during his law enforcement interrogation. Didn't he speak English from time to time, apparently sufficiently to understand what was going on? Correct, but the issue here, and I think the State's brief completes the language barrier claim with the formal education claim. The issue here on appeal is whether or not Mr. Pabello's formal education, was it enough evidence was presented on that claim, not the language barrier claim. Let me ask you something. Does 651C govern counsel's performance at third stage? Yes, it does. In fact, People v. Ross, the case that I cited in the brief, is a third stage petition that is almost on all four with this case. In People v. Ross, counsel filed an amended petition and adopted counsel's post-conviction claims. And one of the claims that was raised was an ineffective assistance of counsel claim regarding a truth in sentencing provision. And counsel adopted that claim, but then never presented any evidence at the third stage on that claim. Ultimately, the defendant couldn't meet prejudice in that case. And then when it went up on appeal for unreasonable assistance of counsel, because the post-conviction counsel didn't present any evidence on that claim, the third district remanded the case because, regardless of merit in that case, because counsel didn't present any evidence on that claim. It's almost exactly like- Based on 651C. Correct. But they said, the third district said, here, Ross wasn't able to establish prejudice because his post-conviction attorney failed to assert Ross's ineffective assistance claim, either in affidavit or through testimony. So they sort of took the prejudice issue out of this, didn't they? Well, counsel didn't present any evidence here. So the trial court, similar as in Ross, isn't able to evaluate the claim sufficiently because no evidence was even presented on the claim. Well, the defendant did testify to his education, and it was argued tangentially. And the trial court actually, in its factual recitation on its order, referenced his sixth-grade education. Two points. So this fifth- or sixth-grade education was addressed either in the affidavit. But whether he has a sixth- or fifth-grade education doesn't get to the heart of a Miranda claim, which is what the defendant understands. Whether he understands the rights that are available to him, and he understands the consequences of waiving those rights. Whether or not he was in sixth grade doesn't address that issue. Well, how would his grades address that issue? How would a transcript of his grades address that? It would shed some light on maybe he had a learning disability, or maybe he took special education classes. But really, counsel needed to put something on the record that would address Mr. Fabello's understanding, and he didn't do that here. And it's worth noting in the record on page 254, Mr. Myers, his trial counsel, even noted that he believed that the issue here was a cognitive issue and not a language barrier issue. And I'd like to note that the state argues that evidence supporting lack of formal education is arguably nonexistent here. However, the crux of the issue here is that counsel thought it was an issue. He amended the claim to add the issue, then didn't support the issue. And so now this court is left with the appearance that the evidence doesn't exist when really counsel just failed in his obligations under Rule 651C. Additionally, I'd like to get back to your point, Justice Burke, where you said he addressed the formal education claim in the facts. But when it went to the decision, the trial counsel never addressed the formal education claim. And it was likely because Fabello's attorney never addressed it in argument. The trial court only referenced the language barrier claim when it found that trial counsel did not perform efficiently. Okay. What do you – I'm going to go back to the 651C. I would say, Your Honor, that the case law doesn't support that finding. As I said in Ross, it is under – 651C is implicated in the third stage hearing, especially since counsel was appointed and at the second stage and just continued on to the third stage. And the cases that State mainly cites, specifically I'm thinking of Seresky, that case is wholly inapplicable to the case because it doesn't – it actually doesn't deal with 651C. Because it deals with counsel who is retained at the first stage and files the initial post-conviction petition. So it's before 651C even attaches at the second stage. So Strickland doesn't apply? To a third stage. No, it's unreasonable assistance of counsel under 651C. Okay. So looking more at Seresky, the substance of Seresky is distinguishable from this case as well. So in Seresky, it was a conflict of interest case where counsel represented the defendant in the direct appeal and then was retained to file the initial post-conviction petition. In the initial post-conviction petition, he failed to allege his own ineffectiveness to circumvent a procedural default on a claim of ineffective assistance of counsel for the trial counsel. So when the court in Seresky addressed the 651 issue that was also raised in Seresky, they found that 651C didn't apply because counsel was retained to file the initial post-conviction petition. That is why the first district created this hybrid Strickland-like analysis addressing air and prejudice. But here, counsel was appointed at the second stage. He was appointed and then appointed at the second stage and then moved on to the third stage. Thus, 651C protections attached that continued to follow the attorney into the third stage and the remedy also attached so that Mr. Povello should be entitled to remand regardless of the merit of his underlying claim. So any time there's any claim raised in an amended post-conviction petition and the trial counsel, for whatever reason, chooses not to present any evidence on it, no matter the frivolity of that claim, it goes back according to Ross? If it doesn't meet Rule 651C, and that's under Illinois Supreme Court case Keeble v. Suarez, it's well established that if 651C is violated because it's a rule, it goes back regardless of the merits of the underlying petition. And in this case in particular, it's not necessarily a frivolous issue because there was no evidence presented on the issue. If the case was remanded back to the trial court, it would be as if the trial court was addressing it for the first time because they're finally given the evidence needed to address the claim. So... How do you distinguish the Supreme Court, the Cotto case, Keeble v. Cotto? I believe Keeble v. Cotto says that... Excuse me, I have it. So 651C applies to appointed and retained counsel the second and third stages. So under Keeble v. Cotto, it shows that 651C is attached here and the record... Apply past the second stage? Isn't that what Cotto says? I believe that my reading of Cotto says that it applies to both. And then other cases have shown that Ross specifically shows that it, in a case very similar to what we have here, it applies at the third stage. So it doesn't say that the general standard of reasonableness governs the third stage? Is that your position, that 651C does? Applies to both the second and third stages, correct. Okay. So I'd also like to note one last point on Zaresky, that even though, as the state noted, they address an odd outcome that happens when you compare 651C to a Strickland analysis, Zaresky still found that Suarez is good law once 651C is attached. So since 651C is attached here, we're asking that the remedies and the protections of 651C apply to Mr. Povello. Well, we certainly can't disregard 651C throughout these whole proceedings. But when we say attach, it can't be harmless error if 651C is not complied with at second stage. We know that. There are three limited things that must be done. But there's no such language for third stage. So how do we move it into third stage with specific tasks that counsel must comply with? I would also point to people versus slaughter, people versus Suarez, and people versus Turner. All three of those cases address additional what they define as an appropriate legal form. So under 651C, counsel has an obligation to shape the claim into an appropriate legal form. So under those cases, specifically under Suarez, the court specifically notes that an appropriate legal form means the necessary pleading requirements, including essential elements of the petitioner's claim, presenting routine defenses and circumventing procedural bars, and providing evidentiary support for the petitioner's position. Those three cases all say at third stage. Well, specifically in looking at people versus slaughter that I just cited from the Illinois Supreme Court, a part of counsel's obligation is providing evidentiary support for the petitioner's position, which would happen at the third stage. Thank you. So I would like to conclude by analogizing this case to people versus Ross, which I initially stated is on all fours with this case. In people versus Ross, a post-conviction petition was filed, and it had to do with the truth in sentencing. And it went to a third stage petition, and counsel did not provide evidentiary support, which ultimately resulted in the defendant not being able to show prejudice. And so the petition was denied. Well, that's exactly what happened here. Here, counsel filed an amended post-conviction petition, and he amended and included this claim. Then it went to a third stage petition. There was no evidence, and now we're here on appeal. And I would offer to this court that this case may even be more egregious than Ross, because in Ross, counsel just adopted the pro se petition and didn't present evidence on it. But here, counsel amended the claim, and he, under Rule 137, believed that it had a basis in fact and law, and then just didn't support it at the evidentiary hearing. So now this court and the trial court was left wondering what the factual contours of the claim even were. And that can be shown, as I stated previously, in its decision, which doesn't even address the formal education claim. If there are no further questions, I will conclude. For all these reasons that I previously addressed, I ask this court that this court should reverse the third stage denial of Mr. Povello's post-conviction proceedings and remand this matter for further post-conviction proceedings, regardless of the merits of his underlying petition. Thank you. Thank you. Mr. Blunting. Good morning, Your Honors. May it please the Court, Counsel, Richard Blunting, on behalf of the people of the State of Illinois. Your Honors, 651C is, of course, implicated in a PC setting where counsel is involved. The people don't dispute that. What the people are saying is that Suarez, Ross, et al. are a unique set of circumstances. They're cases where, again, we analogize it's a crime. If something is not done that is so egregious, only in that rare circumstance do you not need to address the merits of the issues. In Suarez itself, counsel didn't file a 651C certificate. So it wasn't an analysis of the third stage. It was the fact that by not filing a 651C certificate, counsel didn't comply with the Supreme Court rule. Therefore, the lack of compliance in that rule, in and of itself, was sufficient to say we need to remand for compliance. And the State was looking for, I don't know who the State was, but the State was looking for a harmless error analysis. Exactly. And the Court said, no, you can't because you haven't complied. Again, I'm not going to go through each case, but in Ross, it was a prejudice analysis. They didn't talk about the underlying merits. Counsel didn't even have an opportunity to get to possible merits. Why? Because they didn't establish cause and prejudice of the lay presentation. So, again, it was something that was so egregious that by not complying with that, counsel wasn't able to present a defendant's case. Why is it the lack of providing evidentiary support for claim made in the amended post-conviction petition egregious? Well, twofold. One, once you file a 651C certificate, there's a presumption that really defendants kind of beg the question and said, well, you know, we don't need to rebut it. Why? Because they haven't provided this information. Two, more importantly, they did. They could argue that it isn't sufficient, but then that would again go to a Strickland analysis. He did provide. He had defendant testify. Defendant testified regarding his lack of education, or supposedly. The fact that they maybe could have gotten transcripts, what would a transcript show? A transcript may or may not show, you know, what grades he got, but is counsel to go back 30 years after the fact? I'm not sure that we can do it here. Well, he put in a lot of testimony with respect to his education and the admonishments. I don't know if it was a lot, but, oh, definitely. There was testimony both as far as the grades, and there was testimony regarding the admonishments and the ability to speak and understand English. Defendant was not determined to knowingly and voluntarily have waived it, resulting in the lack of his education. It wasn't rebutted. Perhaps if the people had come back and said, well, you know, prove it, then counsel may have been armed with additional information that he could have used in rebuttal. I don't know. It's not relevant because he presented sufficient information to support that claim. But more importantly ---- So it's not a 651C situation, but more of a reasonableness. Yes. And you're arguing that Strickland is at least a basis to look at reasonableness? No question. I mean, the appellate courts have fairly regularly, in a reasonableness case, said, you know, we're going to apply the similar Strickland standard. As the courts in Zaresky, we acknowledge that Zaresky had other avenues and issues, but they did specifically address Suarez and specifically said, we ---- the Supreme Court in Suarez was, you know, very carefully refining when there is, again, what I'm going to say, a chronic-type situation in Suarez, a lack of, you know, a certificate. So you agree that 651C, overall, the general reasonableness requirement, does apply to third estate? Yes. Yeah. I mean, there's a need, of course. And you also agree that Slaughter, in one of the cases at least, says that if you fail to provide evidentiary support for a claim that's made, that's a 651C issue, violation. Arguably. When I say arguably ---- Well, I'm saying if you absolutely ---- I understand what your argument is here, but if you put a claim in, you feel it's big enough to put it in the petition, your amendment petition as an attorney, and then you completely fail to present any evidence on it, is that a Suarez situation where we don't even look ---- how can we really look at the merits if there's nothing in the record on the merits? Again, when I said arguably, because it does matter on these circumstances of the case, there are times, right or wrong, good or bad, where we know that attorneys adopt pro se pleadings. I understand it wasn't done in this case, but attorney adopt pro se pleadings very often just to pacify their clients. So are we to say that if an attorney adopts a pleading or puts in even a pleading maybe due to his client's insistence, that the lack of putting it in, if the record demonstrates otherwise, is that enough to trigger the Suarez line of cases? You say, well, then we don't look at the merits at all? No. If the record itself refutes it. So I would make the proviso that either you have to present evidence or defendant would have to show that there's nothing in the record. Why would defendant have to show that? Because there's a presumption if you correctly file a 651C certificate. There's a rebuttable presumption. In this case, not only did we have the information through the testimony of the defendant regarding everything that was raised in this particular petition, but we also have overwhelming evidence that defendant's confession was knowing and voluntary. What do we have? We have two separate attorneys. His first attorney saying, not only did I speak with the defendant over 50 times, but I indeed had he worked for me previously. So not only did I speak with him in context of legal cases, but I spoke with him outside of court when he and his wife worked for me. And he never requested or needed a translator. I talked with him, and I talked with him in depth. We then have his new attorney. Okay, so he knows how to clean house, or he knows how to clean the office. But it wasn't just know how to clean the office. The testimony and the affidavit. So he both filed an affidavit and then testified in a hearing saying it wasn't just empty the garbage. It was in-depth conversations, both in context of out of court, but also when you represented him. So he understood English, but did he understand enough to waive the right, I think was the issue. Well, he had two attorneys that said, yeah, we discussed complex issues. His second attorney actually testified at the third stage hearing and said, because of what had occurred previously, I came in with an interpreter. I didn't want to take a chance of making the same accusations against me. I never used an interpreter. We discussed the case. We discussed complex issues. The interpreter was never used, despite the fact that they were present at all times. And not only that, but we specifically went over the DVD and looked at the DVD of the confession and, one, after going over multiple times with defendant, he added even additional things to me. He didn't point out anywhere where it demonstrated that he didn't both understand and able to speak. And, three, there wasn't any point that he actually said, I want an interpreter at any stage. So what happens in each of these cases is defendant gets, you know, butts heads with his attorneys at that point in time, comes in the court, and says, I need an interpreter. I've asked my attorney. Both attorneys, which is not always easy with clients, said, that's not true. You know, the first counsel said it's an outright lie. He never asked. And, oh, by the way, we also have the trial judge that notes that he's also interacted with defendant in open court and the defendant was able to respond to him appropriately. So the question is not just, did we talk out of, you know, let me. Does this carry over from the language to the general intelligence issue? The counsel accuses you of conflating these two, and your argument right now for the last two minutes or three minutes or so. His language. Seems to be conflating the two. Again, as far as general intelligence, I'm not sure what else you can show. Absent records of mental. But don't you think if he alleged that in his petition, don't you think he would have tried to show something? He tried to the extent that he could. And, again, I don't know why. We never know completely why an issue is raised and to what nuances. To the extent that he apparently felt appropriate, he did question defendant on those issues. He was asked by the trial judge, you know, what did you do? He goes, I didn't, you know, contest the lack of filing a motion to suppress because I didn't feel that it was appropriate. That presumes both language issue but also the lack of understanding thereof. Again, I think an analogy is if you walk into a Target or a big store and there's someone working in their stocking shelves and you ask them a question and there's a heavy accent, there's a difference between saying where are the suppositories and they bring you to the cat food or where are the suppositories and they bring you to the suppositories. There's a difference if you're asking. Well, I'm not getting that again. The analogy being is the understanding of language. The reason why I'm mentioning that is because specifically in this case, defense counsel pointed out that on the record there's a discussion between the interviewing officer and the defendant about, hey, you used to work at a gas station that I came into all the time. So there was a discussion not just I came into the gas station and the defendant said yes, thank you very much versus they discussed specifics about why is the gas station no longer there and the defendant responds, well, there's underground tanks that had to be dug up. So again, sorry for the analogy I had at Lincoln. I was about to. The linkage is that questions asked in this specific case show that there was an understanding far beyond. There was no evidence. So then there was no basis for counsel to put on any more evidence. Any more than was already there. And again, as I said, I don't know if you could find 30. I mean, I don't know if any of our fifth or sixth grade transcripts would be readily available. I'm certainly not sure what counsel is supposed to go back and find in Mexico. Are you supposed to interview family? Try to find old teachers? Regardless of, you know, how do you prove a negative? He said he only went through fifth or sixth. If he got through the sixth grade but got all Ds. That might show. If they used that system again. Or it might show that he didn't show up a lot or he wasn't a good student. It also doesn't show that he didn't go to seventh or eighth grade. That was his self-serving testimony, which again, it wasn't disputed. So counsel didn't need to go further to argue that, you know, indeed he did it. But it's his burden. I mean, it's the petitioner's burden to show that there has been a substantial at this point, a substantial violation or a substantial lack of something. And it's not the State's responsibility to step in and say, well, wait a minute. We want to question that. Oh, well, we've got more information. The more information should happen up front. Arguably, unless he felt that he presented enough to support that claim. But again, realize that the evidence was overwhelming against, including, you know, it's hard to find the need to present evidence that isn't supported by the facts of the case. And the facts of the case, including he engaged in conversations and discussions with defendant. Those conversations and discussions would have showed not only his understanding of the English language, but would have demonstrated if he felt there was a cognitive disability. The evidence demonstrates, again, from two attorneys, discussion of the officer, the interviewing officer, and as I said, of the judge himself, who said, defendant knows and understands, therefore, was able to make a knowing and voluntary waiver. In Pendleton, the Court says that at basic, it's in the second stage paragraph, so to speak, that at post-conviction proceedings, defendant is entitled to only a reasonable level of assistance, which is less than that afforded by the federal and state constitutions. They then go on to talk about second and third stages, but they never talk about prejudice vis-à-vis reasonableness. What's the issue there? I think the issue is simply I don't know that any court has spelled out as well as maybe we would like to differentiate between what the exact standard is at third stage. That's why, despite the unusual nature of Zareski, I kind of did bring that case in because that was a case where the Court said, okay, we're analyzing soirees. We're analyzing what and when you need to show something. Now, is that something reasonableness or is it ineffective assistance? Well, of course it's reasonableness, but the reason why Zareski is helpful is because they say it makes no sense, and the Supreme Court could not have meant that the standard of showing reasonable assistance is easier than ineffective assistance. If you have ineffective assistance of counsel at trial or in direct appeal where you're entitled by a constitution the right to counsel and there's a Strickland standard, how can it be easier for a defendant to say, well, if we raise reasonableness, you don't have to demonstrate Strickland. And there are cases, and again, I cited the Profit as well, where the Profit, Zareski, and there's a line of cases that say, even though there isn't a specific description of what reasonable assistance means, and even though reasonable assistance is kind of undefined, we do apply the Strickland analysis at third stage, and that is you need to demonstrate both ineffectiveness, something where you've done, you know, something wrong, and prejudice. So I would be more than happy for this Court to analyze that issue, address it, and publish it, and make a finding one way or another to address exactly what that issue is, but, you know, the people would submit that, yes, reasonable assistance, barring something significant, such as failing to file a 651C, or an absolute lack of any evidence where the record does not dispute that, that you need to make a prejudice finding. Well, it's easy if you find no ineffective assistance. Well, of course. Then find no reasonableness. Yes. And the hard part is, and I don't think there's a case out there that finds ineffective assistance was proven, but now we're going to take a step backward and say it was ineffective, but it was reasonable. It depends. Again, that's why I kind of answered the question relating to, you know, what exactly do you do at third stage, and the answer is it depends. If the ineffectiveness rises to a level of the Suarez et al., then the Court says we don't even have to address it. If it doesn't rise to that level, if we find ineffectiveness. Then we go to Strickland. Then we go to Strickland if that ineffectiveness isn't so absolute. So that's why I gave the example if, again, he adopts a pro se petition, but can't really support it, but does it to pacify the client. The record shows otherwise that would be not a Suarez, that would be, again, a Strickland analysis. Right. And then the suppository and a Catholic analysis makes it perfectly clear. Exactly. Well, combined with, again, with the linkage of what happened in this specific case. Thank you. Thank you. It gives me a new way to look at both issues. Yes, again, that analysis, that analogy in of itself without the linkage wouldn't make sense. Hopefully with the linkage it does. Thank you. Ms. Hopkins-Reid. Ms. Hopkins-Reid, what I'm hearing is basically what the state is saying is you kind of have to look at the totality of all of the testimony, all of the evidence in order to determine whether or not there was ineffectiveness. Do you disagree with that? Well, looking at the totality of the evidence, the totality of the evidence goes towards the language barrier claim. Counsel didn't present evidence on whether the Miranda waiver, whether he understood those rights because of his education level and his cognitive abilities. But then you have the admonishments. Then you have the testimony of a police officer who had discussions with him at the gas station. Then you have the lawyer who had discussions with him when he was working with him. Do you not take that all into consideration to help you with his cognitive functioning or his ability to understand as well as his ability to understand English language? So even looking at his cognitive ability with the totality of the record, there's two points that stick out to me. The first is that his trial counsel noted on the record that the real issue was the cognitive ability that Mr. Cabello had and not the language barrier. And as I said, that's at page 254 on the record. But also, Mr. Cabello even testified that if he didn't understand something, he was known to just go, uh-huh, okay, and nod his head and agree. Understand language-wise or just not understand intellectually? So if I understand your question correctly, it's the record and the totality. But I still stand on the proposition that there was no evidence presented here that goes to his understanding for the limited, his limited education. Well, I mean, you accuse counsel of conflation. And, I mean, what you're saying is that counsel should basically present evidence on the language and then say, okay, Judge, now I'm shifting gears. Now I'm going to present evidence on the intellect, general intellect. But really, the two things kind of meld together. And there was evidence in the record of what his educational level was in a school in Mexico. It was either fifth or sixth grade, correct? Correct. But telling someone that you have an education level of either fifth or sixth grade doesn't shed any light on the fact of what his understanding was. We're not – counsel doesn't have to present transcripts. He could have just questioned the defendant. Like, what – did you understand what was going on? I thought he said he didn't understand. As to the language barrier claims, he doesn't say, do you know what unknowing is? Or do you understand what consequences you're giving up because of Miranda? Like, understand what rights are even available to him. So then what you're saying is the failure to not present the grades for what he learned in the fifth grade was not unreasonable. I'm saying not to do that. He doesn't have to present transcripts. He does have to present something, and here we have nothing. Well, why can't he – and I understand that this is questioning the record, but in the end, unless some issue is belied by the record, the record here indicates that he was communicating with the trial court. He was – well, and the trial court believes that it was a knowing communication. So how do we just disregard that? What's the standard of review there? Well, the standard is the same as it was addressed in the – like, I forget what I had put in the briefs. I can't remember. I'm sorry, Honor. It's okay. But the issue here is that even look – can you repeat your question? I apologize. Well, I mean, we're – a lot of postconviction is supposed to be outside of the record. That's how it comes up, that it wasn't something that could be in the record. In this case, we have a significant record of the – of the communications between the court and the defendant, the counsels, the two attorneys and the defendant. The police officer is there, but that's – you know, that's not what I'm looking at particularly. That part of the record says he talked to us about these things. He understood us, and he did not ask at this point when I brought in the interpreter for the interpreter to participate in any way. How do we disregard those things? I think the key here is that, as you highlighted, that he was able to communicate like talking with – and that goes to the Spanish – the language here. But it was talking about this very serious issue that he was facing, the criminal issue. Right, right. So, I mean, he knew what the issue was. He saw the videotape. How do we just say, oh, well, notwithstanding any of those things, we have to do – he has to do more, and it is his responsibility to do more. What more could he have done? He should have put on evidence that – of his cognitive understanding, and that could have even just been through testimony, but he didn't do that. And I think the best way to highlight it is that the speculation of the facts, he could have put on a transcript or he could have done this. The problem is that we don't have anything to point to in the record that says, oh, he did put this on. He did – these are concrete facts that point to that claim. So your position is, before we end, your position is that if an attorney makes an allegation in a post-conviction, he must put evidence on regarding that allegation. The attorney either has to put evidence on or withdraw the claim? Even if it's apparent that maybe that claim isn't as strong as he thought it was at the time he filed. Then he has a duty to the court to withdraw a frivolous claim. If it's not necessarily frivolous, but the evidence in the record shows otherwise, why should we remand it then? If the evidence shows otherwise, then it wouldn't necessarily be a non-meritorious claim. But if he has evidence and there's a nebulous hint that there's something out there because trial counsel is saying, yeah, it looks like he has cognitive issues, but we don't have anything to point to to be like, yeah, he presented this cognitive issue. So he either has to put on evidence or he needs to withdraw the claim if it has no merit. And again, we're talking about cognitive issues, but this is a cognitive issue such as some type of handicap, low IQ or whatever, that's way different than educational level. We're talking about two totally different things. I mean, the only allegation was educational. Right. Thank you. Thank you. Thank you. All right. Thank you, counsel, for your arguments. We'll take the matter into advisement. We will stand in recess to prepare for our next case.